224 F.2d 177
 UNITED STATES of America, Appellant,
v.
Ralph A. CHINBURG, doing business as Fremont Plumbing Shop;
Sunset Lumber and Hardware Company, a Wyoming corporation;
Ed Von Krosigh; Clarence E. Blomberg; and C. A. McDougall,
Sheriff, Fremont County, Appellees.
 No. 5076.
 United States Court of Appeals Tenth Circuit.
 June 29, 1955.
 
 Fred W. Smith, Atty., Dept. of Justice, Washington, D.C. (Perry W. Morton, Asst. Atty. Gen., John F. Raper, Jr., U.S. Atty., Cheyenne, Wyo., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D.C., were with him on the briefs), for the United States.
 Donald Spiker, Riverton, Wyo., and A. G. McClintock, Cheyenne, Wyo., for appellees.
 Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.
 PHILLIPS, Chief Judge.
 
 
 1
 In September, 1951, Esther Chamberlin entered into a contract with Ernest Grider for the erection of a dwelling house on an 80-acre tract of land situate in Fremont County, Wyoming. Chinburg, Von Krosigh, Blomberg, and the Sunset Lumber and Hardware Company, a Wyoming corporation, furnished labor and material in the construction of the house and each of them filed a notice of claim of lien upon the improvements.[1] Esther Chamberlin paid to Grider, $18,714.00, the full amount due him under the contract. Grider failed to pay amounts due to the lien claimants, aggregating $4,446.01.
 
 
 2
 The lien claimants brought actions in the District Court of Fremont County, Wyoming, against Esther Chamberlin and Jesse Chamberlin to foreclose their claimed mechanics' liens under the provisions of Ch. 55, Wyo.Comp.Stat.1945. The United States was not a party to such actions.
 
 
 3
 A judgment was entered in the state court awarding the lien claimants a lien upon the dwelling house and improvements placed upon the land under the contract with Grider. The judgment adjudged that the lien claimants were not entitled to a lien upon any portion of the land.
 
 
 4
 The United States brought this action in the United States District Court for the District of Wyoming against the four lien claimants and McDougall, Sheriff of Fremont County, who was appointed in the state court action to sell the house and improvements to satisfy the lien claims, to set aside the state court judgment, and to quiet the title of the United States in and to the land and the improvements thereon against the lien claimants.
 
 
 5
 From a judgment denying the United States any relief and dismissing the Federal court action, the United States has appealed.
 
 
 6
 The land was allotted to Kate S. Breaker under the provisions of the General Allotment Act of February 8, 1887, 24 Stat. 388, 25 U.S.C.A. § 331 et seq. On January 6, 1908, a patent therefor was issued to Breaker. As required by § 5 of the General Allotment Act, 25 U.S.C.A. § 348, the patent reserved the title to the land in the United States, in trust for the Indian, for a period of 25 years. In accordance with the provisions of the General Allotment Act, such trust period has been extended by Executive Orders until 1968. By deed dated June 12, 1950, the heirs of Breaker conveyed the land to Esther Chamberlin, an enrolled Arapahoe allottee. By the terms of the deed the trust status was preserved and the legal title remained in the United States in trust for Chamberlin.
 
 
 7
 The last statement of fact is challenged here for the first time by the lien claimants. However, their contention is foreclosed by the provisions of the deed, by a stipulation entered into by them in the state court action, by the judgment in the state court action, by stipulation entered into by them in the instant action, and by admissions of record in the instant action.[2]
 
 
 8
 The question presented, therefore, is this: Is a dwelling house erected upon land held in trust by the United States for the benefit of its Indian ward, under contract with the Indian, subject to the state law of Wyoming providing for mechanics' liens, and may such dwelling house be sold to satisfy such liens?
 
 
 9
 We are of the opinion that the question is answered by the decision of the Supreme Court of the United States in United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 479, 47 L.Ed. 532. In that case, the question was presented whether permanent improvements, such as houses and other structures upon lands which had been allotted to Indian allottees under the General Allotment Act and to whom trust patents had been issued, were subject to taxation by the State of South Dakota and to a lien for such taxes. The court quoted the Fifth section of the General Allotment Act, which in part read:
 
 
 10
 "That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare, that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or encumbrance whatsoever: * * *.'
 
 
 11
 The court, 188 U.S. at pages 442, 443, 23 S.Ct. at page 482, then stated:
 
 
 12
 'Looking at the object to be accomplished by allotting Indian lands in severalty, it is evident that Congress expected that the lands so allotted would be improved and cultivated by the allottee. But that object would be defeated if the improvements could be assessed and sold for taxes. The improvements to which the question refers were of a permanent kind. While the title to the land remained in the United States, the permanent improvements could no more be sold for local taxes than could the land to which they belonged. Every reason that can be urged to show that the land was not subject to local taxation applies to the assessment and taxation of the permanent improvements.
 
 
 13
 'It is true that the statutes of South Dakota, for the purposes of taxation, classify 'all improvements made by persons upon lands held by them under the law of the United States' as personal property. But that classification cannot apply to permanent improvements upon lands allotted to and occupied by Indians, the title to which remains with the United States, the occupants still being wards of the nation, and as such under its complete authority and protection. The fact remains that the improvements here in question are essentially a part of the lands, and their use by the Indians is necessary to effectuate the policy of the United States.
 
 
 14
 'Counsel for the appellee suggests that the only interest of the United States is to be able at the end of twenty-five years from the date of allotment to convey the land free from any charge or encumbrance; that if a house upon Indian land were seized and sold for taxes, that would not prevent the United States from conveying the land free from any charge or encumbrance; and that, in such case, the Indians could not claim any breach of contract on the part of the United States. These suggestions entirely ignore the relation existing between the United States and the Indians. It is not a relation simply of contract, each party to which is capable of guarding his own interests, but the Indians are in a state of dependency and pupilage, entitled to the care and protection of the government. When they shall be let out of that state is for the United States to determine without interference by the courts or by any state. The government would not adequately discharge its duty to these people if it placed its engagements with them upon the basis merely of contract, and failed to exercise any power it possessed to protect them in the possession of such improvements and personal property as were necessary to the enjoyment of the land held in trust for them. * * *'
 
 
 15
 The reasoning in the Rickert case is equally applicable here. The results that would flow from the taxation of improvements upon land held in trust by the United States and the sale of such improvements for taxes would likewise flow from the imposition of mechanics' liens upon lands held in trust by the United States and the sale of such improvements to satisfy such liens, and would frustrate the declared policy of the United States with respect to such lands.
 
 
 16
 The judgment is reversed and the cause remanded with instructions to enter judgment for the United States.
 
 
 
 [1]
 Section 55-201, Wyo. Comp. Stat. 1945, in part provides for a mechanic's lien upon the improvements and upon the land on which they are situated to the extent of one acre
 
 
 [2]
 The deed recited:
 'That whereas the lands hereinafter described were allotted to or inherited by the said parties of the first part under the provisions of legislation by Congress pursuant to which said lands are restricted or held in trust by the United States for the benefit of said grantors and are not subject to taxation; nor to alienation or encumbrance without the consent of the Secretary of the Interior, and whereas the said party of the second part being also a restricted Indian desires to acquire said hereindescribed lands subject to the same conditions, restrictions, and limitations as to taxation, alienation, or encumbrance as now rest thereagainst;'
 and the conveyance was subject to the express condition
 'that the execution of this deed by the party or parties hereto or its approval by the Secretary of the Interior shall not operate in any manner to remove any of the restrictions now resting against said lands, or to remove any trust or other conditions imposed upon said land as expressed in the original trust or any other patent issued therefor, or any part thereof; it being distinctly understood and agreed that the scope and intent of this deed is simply to transfer and convey such right, title, and interest as the parties of the first part now have in such lands to the said party of the second part subject to the conditions, restrictions and limitations as now rest thereagainst in the hands of the parties of the first part.'